**MITCHELL ENERGY CORPORATION, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 80–2304.

United States Court of Appeals, Fifth Circuit.* Unit A

Dec. 3, 1981.

Rehearing and Rehearing En Banc Denied Jan. 13, 1982.

Morgan, Lewis & Bockius, Frank P. Saponaro, Jr., Washington, D.C., Homer John Penn, The Woodlands, Tex., for Mitchell Energy Corp.

Robert F. Christin, John A. Cameron, Jr., Attys., Jerome M. Feit, Deputy Sol., Washington, D.C., for Federal Energy Regulatory Com'n.

Paul E. Goldstein, Joseph M. Wells, Chicago, Ill., Harry L. Albrecht, Washington, D. C., for Natural Gas Pipeline Co. of· America.

Petition for Review of an Order of the Federal Energy Regulatory Commission.

Before CHARLES CLARK, GARZA and SAM D. JOHNSON, Circuit Judges.

GARZA, Circuit Judge:

Mitchell Energy Corporation petitions for review of an order of the Federal Energy Regulatory Commission [1] directing Mitchell

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

1. The Federal Energy Regulatory Commission (FERC) assumed most of the duties of the Federal Power Commission on October 1, 1977. In

to refund more than $9 million allegedly collected in excess of legally authorized rates. This is the fourth time that a circuit court has been asked to review a Commission order arising from the facts of this case. Most recently, in *Mitchell Energy Corporation v. FERC*, 580 F.2d 763 (5th Cir. 1978) (hereinafter *Mitchell I*), this court reviewed a similar refund order of the Commission and found it necessary to remand the case back to that agency for further proceedings where the Commission had improperly used evidentiary standards applicable to a special rate case. We now review the Commission's order promulgated following remand and conclude that the Commission acted within its discretion in ordering and computing Mitchell's refund obligation and that such was adequately explained and justified in the Commission's order of August 8, 1980.

### FACTS

This proceeding began in August, 1972, when Mitchell, a producer of natural gas, filed a petition seeking special relief from applicable area rates established in Opinion No. 607, Opinion and Order Determining Just and Reasonable Rates for Natural Gas Produced in Other Southwest Area (OSWA rates), 46 FPC 900 (1971), *on rehearing*, Opinion No. 607–A, 47 FPC 99 (1972), *aff'd sub nom., Shell Oil Co. v. FPC*, 484 F.2d 469 (5th Cir. 1973), *cert. denied sub nom., Mobil Oil Corp. v. FPC*, 417 U.S. 973, 94 S.Ct. 3180, 41 L.Ed.2d 1144 (1974). In its petition, Mitchell sought to increase its rates charged for natural gas sales from its Boonesville Bend Field in Wise County,

Texas from a "weighted average" rate of 18.859 cents per Mcf to 30.25 cents per Mcf.[2] Hearings on the petition for special relief were halted by a settlement agreement, approved by all parties, which was adopted by the Commission in Opinion No. 649, Opinion and Order Granting Special Relief and Terminating Proceedings, 49 FPC 424 (1973). The settlement agreement provided Mitchell with the higher rate it sought in its petition in exchange for its agreement to drill at least 125 additional wells in the Wise County area and expend some $16.5 million in the United States on various drilling activities. The settlement agreement further provided that every five years, beginning in 1977, there would be an automatic price increase of 1 cent per Mcf and a redetermination of the 30 cent base rate.

Intervenors sought review of the order granting special relief in the United States Court of Appeals for the District of Columbia Circuit, and the case was remanded for consideration of additional evidence concerning Mitchell's costs and profits under the special rate. *MacDonald v. FPC*, 505 F.2d 355 (D.C.Cir.1974). Following the remand and while the Commission was considering Mitchell's cost evidence with respect to the special relief issues, Opinion Nos. 699[3] and 749[4] were issued by the Commission. These opinions increased the prevailing area rates for new gas and flowing gas to 50 cents per Mcf and 23.5 cents per Mcf, respectively. Because the area and national rates now exceeded the special relief rate, Mitchell requested the Commission to permit it to withdraw its petition for

this opinion, the term "Commission" refers to either FERC or its predecessor agency, whichever was active during the time period referenced.

2. This weighted average was based on the area rate of 18.7 cents for flowing gas and 24 cents for new gas as established in the OSWA rate proceeding, Opinion Nos. 607 and 607–A, *supra*. The term "Mcf" refers to "thousand cubic feet"—the standard unit of measure for gas sales.

3. Opinion No. 699, Just and Reasonable National Rates For Sales of Natural Gas, 51 FPC 2212 *rehearing denied*, Opinion No. 699–H, 52 FPC

1604 (1974), *aff'd sub nom., Shell Oil Co. v. FPC*, 520 F.2d 1061 (5th Cir. 1975), *rehearing denied*, 525 F.2d 1261 (5th Cir.), *cert. denied sub nom., The California Co. v. FPC*, 426 U.S. 941, 96 S.Ct. 2661, 49 L.Ed.2d 394 (1976).

4. Opinion No. 749, Just and Reasonable National Rates For Sales Of Natural Gas In Wells Commenced Prior to January 1, 1973, 54 F.P.C. 3090 (1975), *on rehearing*, Opinion No. 749–C (1976), *affirmed in part and set aside in part sub nom., Tenneco Oil Co. v. FERC*, 571 F.2d 834 (5th Cir. 1978), *cert. dismissed*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1979).

special relief and effectuate the area rate which was applicable nationwide to producers of similar natural gas.[5] The Commission granted Mitchell's request,[6] but set for hearing the question of Mitchell's obligation, if any, to refund amounts collected pursuant to the special relief granted by Opinion No. 649.

At the hearing on the refund question, the ALJ used evidentiary standards proposed in *MacDonald* (the prior special rate case) to determine if Mitchell was entitled to charge the 30.25 cent rate authorized in Opinion 649 or was obligated to refund any amount in excess of a just and reasonable rate. The ALJ concluded that Mitchell should refund all amounts collected pursuant to the special relief order in excess of amounts Mitchell could have collected absent the special relief order. The Commission adopted the conclusion of the ALJ and denied rehearing.

On appeal, this Court found that the Commission had "erred in treating the evidentiary requirements set out in *MacDonald* as controlling" and remanded the case. *Mitchell I, supra.*

Upon remand, the Commission provided the parties further opportunity to comment on "the appropriate steps to be taken by the Commission in light of the opinion of the Fifth Circuit." Mitchell responded requesting a hearing in the event the Commission decided to apply an evidentiary standard other than the one proposed by Mitchell requiring examination of Mitchell's individual costs. On August 8, 1980, the Commission ordered Mitchell to refund all amounts collected under the special rates which exceeded the appropriate area and national rate applicable during the "locked-in" period.[7] From an order denying rehearing, Mitchell appeals to this Court.

## ISSUES

Mitchell raises three primary contentions, the first two of which concern the Commission's decision to order refunds and the third which concerns the Commission's computation of the refund obligation. First, Mitchell contends that the Commission erred in failing to follow this Court's mandate in *Mitchell I* because it refused to consider Mitchell's actual costs of production in determining if a refund was due.

---

**5.** Prior to withdrawing its special relief request, Mitchell attempted to incorporate the new national rates into its rate schedule. In the settlement adopted by Opinion No. 649 granting special relief, the contract for purchase of natural gas between Mitchell and Natural Gas Pipeline Company, Mitchell's principle buyer, was incorporated. This contract permitted Mitchell to charge Natural 30.25 cents per Mcf for all gas sold to Natural. Following the issuance of Opinion 699 which raised the rate of new gas above that which Mitchell was receiving under the special rate, Mitchell amended its agreement with Natural to permit it to charge the higher of the special rate or national rate. Shortly thereafter, Mitchell filed a rate increase with the Commission to permit it to charge the national rate. The Commission accepted the proposed rate increase, but only with respect to Mitchell's interests not covered by Opinion No. 649. The Commission reasoned that Mitchell was not entitled to a rate higher than the settlement rate for new gas while it continued to enjoy the benefits of the settlement with respect to the flowing gas. Mitchell Energy Corporation, Order Accepting Proposed Increased Rate, In Part, and Rejecting It, In Part, And Accepting Contract Amendment For Filing, 52 FPC 982 *rehearing denied*, 52 FPC 1769 (1974).

This Court affirmed the Commission interpreting the settlement agreement to preclude any adjustment in a base rate until 1977, when the contract called for redetermination of the base rate. The court also stated,

Mitchell's alternatives prior to 1977 are to waive entirely its own special relief or abide by the terms of its settlement and wait until 1977 to negotiate the contractual price.

*Mitchell Energy Corporation v. FPC,* 519 F.2d 36, 43 (5th Cir. 1975). The Commission relies in part upon this statement as authority for its finding that Mitchell was entitled to either special rate treatment or area rate treatment, but not the best of both.

**6.** Mitchell Energy Corporation, Docket No. RI73–60, Order Permitting Withdrawal of Petition for Special Relief and Setting Hearing on Issue of Refunds (May 20, 1976).

**7.** Mitchell Energy Corporation, Docket No. RI73–60, Order Determining Refund Obligation on Remand and Ordering Refunds (August 8, 1980). "Locked-in" period refers to the period between February 21, 1973 and April 20, 1976 during which Mitchell collected the special relief rates.

Second, Mitchell argues that the Commission abused its discretion by failing to give due weight to the equitable factors in this case which compel the waiver of any refund obligation. Finally, Mitchell contends that the Commission erred in refusing to adopt 23.5 cents per Mcf as a refund floor for the purpose of computing the extent of Mitchell's refund obligation.

## THE REFUND OBLIGATION

■ Mitchell's first contention is based upon their reading of this court's previous decision in *Mitchell I*. A true reading of that case, however, reveals that the court was primarily concerned with the ALJ's use of the *MacDonald* special relief standards to determine if Mitchell's charges had been just and reasonable when "ordinar[y]" evidentiary standards for determining just and reasonable rates were applicable.[8] In *Mitchell I* the court, without stating the particular standards, remanded the case to the Commission to apply "evidentiary standards by which just and reasonable rates and refund obligations ordinarily are determined." 580 F.2d at 765 (5th Cir. 1978). The Commission interpreted the court's order to require them to apply the just and reasonable area rate in effect during the locked-in period to determine Mitchell's refund obligation. Mitchell read the order to require the Commission to consider their individual cost evidence or "explain the reason for its departure." Under either reading of the court's order, however, we find

that the Commission was within its discretion to order Mitchell to refund the excess over the just and reasonable area rates it received under the special pricing request it chose to withdraw. Furthermore, the reasons set forth in the Commission's order indicate that the Commission did not abuse its discretion in considering the equitable factors which Mitchell contends compel the waiver of any refund obligation.

As the Commission stated in its order and as the facts of this case reveal, Mitchell, in 1972, on its own initiative, applied to the Commission seeking special relief from the OSWA rates applicable to natural gas producers. It entered into an agreement in which it pledged to perform certain drilling activities, and accordingly, the Commission granted Mitchell the special relief which permitted it to charge higher prices for its gas than other producers. After area and national rates increased and the agreement granting special relief was no longer economical to Mitchell, and before Mitchell had completed the drilling activities it undertook to perform, it sought to escape from the agreement. In order to do so, Mitchell voluntarily withdrew its petition for special relief whereupon it was then permitted to charge higher rates under the newly established area and national rates. Because Mitchell chose to withdraw its special rate request, the Commission elected to treat Mitchell as it had treated other Southwest area producers; the Commission permitted Mitchell to receive the same revenues it

---

**8.** The relevant portion of the Court's opinion is as follows:

FERC erred in treating the evidentiary requirements set out in *MacDonald* as controlling in this refund determination case. The court in *MacDonald* concluded that the special relief order was not supported by substantial evidence and addressed the nature of evidence necessary to substantiate special rate relief. The present proceeding is to determine whether Mitchell collected amounts in excess of just and reasonable rates, and if so how much, and whether Mitchell should be required to refund any or all of any excess. Nothing in *MacDonald* itself supports the conclusion by the ALJ, adopted by FERC, that the *MacDonald* evidentiary standards for special rate relief "must be controlling" as a plenary rule of evidence in this refund case.

FERC's interpretation of *MacDonald* as controlling led it to depart from the evidentiary standards by which just and reasonable rates and refund obligations ordinarily are determined. An agency must either conform itself to its prior decisions or explain the reason for its departure. [citations omitted] The reasons given in this instance are not acceptable. This conclusion makes it unnecessary for us to consider Mitchell's argument that it was deprived of due process because the ALJ applied the *MacDonald* standards only after Mitchell, in the expectation that usual standards for refund cases would be applied, had prepared and submitted its evidence.

*Mitchell Energy Corp. v. FERC*, 580 F.2d at 765.

would have received had it been charging the just and reasonable area rates which other Southwest area producers were permitted to charge during the locked-in period. The Commission stated in its order that "[a] producer's refund obligation is ordinarily the difference between the rate collected and the applicable just and reasonable rate." In this case, Mitchell was ordered to refund the difference between the special rate it charged and the just and reasonable area or national rate it could have charged had it never applied for special relief.

To excuse Mitchell from any refund obligation would permit it to obtain "dual" benefits. Mitchell would receive the benefit of the special relief settlement rate when such rate exceeded the OSWA rate and, when the OSWA rate surpassed the special relief rate, Mitchell could abrogate its special relief settlement agreement and charge its customers according to the area rates. A similar "dual" benefit concept was rejected in part in *Mitchell Energy Corporation v. FPC*, 519 F.2d 36 (5th Cir. 1975).[9] Under these circumstances, it is apparent that the Commission was within its discretion to act as it did. Whatever variation, if any,[10] by the Commission from the "evidentiary standards by which just and reasonable rates and refund obligations ordinarily are determined" was adequately justified and explained on remand.[11]

## THE REFUND FLOOR

■ Having found that the Commission was within its discretion to require Mitchell to refund the excess of the special rates it collected over the applicable just and reasonable area rates, the question arises as to the proper refund floor which should be used in calculating Mitchell's obligation. Mitchell contends that, if refunds are to be imposed, the Commission should recognize the Opinion No. 749 rate (23.5 cents per Mcf with respect to flowing gas) as a refund floor. Opinion No. 749 became effective July 1, 1976; prior to its enactment, the

9. *See note 5, supra.*

10. Mitchell argues that "the principal standard by which refund obligations ordinarily are determined is to ascertain whether the costs which the producer experienced exceeded the revenues which it collected." It cites several cases as explicit or implicit support for this principle; *see Wisconsin v. FPC*, 373 U.S. 294, 83 S.Ct. 1266, 10 L.Ed.2d 357 (1963); *Consumer Federation of America v. FPC*, 515 F.2d 347 (D.C.Cir.1975); *City of Chicago, Illinois v. FPC*, 458 F.2d 731 (D.C.Cir.1971); *Pure Oil Co.*, 28 FPC 889 (1962); *Shell Oil Co.*, 28 FPC 257 (1962). These cases, however, are not analogous to the instant case. First, none of these cases involved a factual scenario similar to the present one, where a company collected revenues pursuant to a special rate request which it subsequently withdrew in order to collect higher national rates. Second, in those cases where refunds were in dispute, none of the producers whose rates were challenged were subject to area or national rate regulation during the period challenged; therefore, in determining refunds, it was only logical that individual cost evidence be considered. In this case, Mitchell was subject to area/national rate regulation and was thus required to either charge area rates or apply for special relief. Third, no case holds that individual cost-of-service must form the principal basis for determining refunds. Indeed, *Consumer Federation of America v. FPC, supra*, the case upon which Mitchell principally relies, recognizes that many factors may be considered in determining a refund and "arriving at an equitable conclusion." Finally, even if the Commission did vary from the "standards by which just and reasonable rates and refund obligations ordinarily are determined," we find that the Commission adequately explained and justified its decision in its order of August 8, 1980.

11. We note that at the time Mitchell sought to withdraw from the special rate proceeding, it had completed only 44 of the 125 wells it had agreed to drill within the five-year settlement period, notwithstanding the fact that almost two-thirds of that period had expired. Thus, while Mitchell had not fulfilled its portion of the special rate agreement at the time it withdrew, it argues that it was still entitled to the benefits of that agreement. It is apparent that Mitchell obtained substantial benefits by withdrawing from the agreement. It became eligible for the 50 cent per Mcf national rate which later increased to 93 cents per Mcf for wells commenced between January 1, 1973 and January 1, 1975, and it qualified for the new national rate of $1.42 per Mcf for the 81 wells it continued to drill as part of its withdrawal agreement. In light of these factors and those previously discussed, the Commission did not abuse its discretion in determining that the equities of this case did not compel a waiver of Mitchell's refund obligation.

rate charged for flowing gas was 18.5 cents per Mcf as established in Opinion No. 607. Mitchell reads one provision of Opinion No. 749 as authorizing the application of the rates established within it to operate as a floor for all refund obligations arising after its enactment. We do not read Opinion No. 749 as authorizing the retroactive application of the 23.5 cent rate for flowing gas and accordingly, we shall respect the Commission's interpretation of the effect of Opinion No. 749 on the computation of refunds during the time period in which Opinion No. 607 rates were applicable. *See South States Oil & Gas Company v. FERC*, 653 F.2d 1052 (5th Cir. 1981). As the Commission stated, it would be inconsistent with their determination that Mitchell should be treated as all other Southwest producers if anything other than the area rate applicable during the locked-in period was used to compute Mitchell's refund obligation. Therefore, we must dismiss Mitchell's final claim.

AFFIRMED.